## LOUISA HAYES

*vs.*

## AUGUSTUS JOHNSON ET AL.

1. A deed of assignment by an insolvent which authorizes the trustee to make sale of the assigned property " whenever he shall think proper and conducive to the interest of the trust" is void as to creditors.
2. So such a deed is void which requires a release from the creditors as a condition of their sharing in the proceeds of the assigned estate.
3. It is also void where by its terms it provides that the trustee shall not be liable for any loss that may happen to the trust estate "unless the same be consequent upon his wilful commission, omission or neglect," the effect of such a provision being to exempt the trustee for failing to exercise ordinary care, and it would seem to exempt him even for acts of gross negligence.
4. The mere fact that one is unable to pay his debts at the time of obtaining a loan does not render the transaction fraudulent. *Aliter* if at the time of negotiating the loan he knew that he could not pay it, or did not intend to pay it.
5. If an assignment be fraudulent, execution may be had by *fieri facias* without coming into equity to have the deed set aside.

In Special Term. Equity No. 523. Decided Dec. 31, 1866.

BILL to set aside a fraudulent assignment.

MR. WM. JOHN MILLER, for complainant.

MR. JUSTICE OLIN delivered the opinion of the Court:

Mr. JUSTICE OLIN delivered the opinion of the Court :

The bill states that on the 8th of May, 1865, Johnson and Boher made two promissory notes for $250 each payable to the order of Carlie Hayes sixty days after date, and that before these notes fell due they were transferred to the complainant for a valuable consideration.

That Johnson and Boher borrowed from the complainant on the 15th February, 1865, $1,000, and executed their note for that amount payable three months after date.

That the complainant fearing that Johnson & Boher were insolvent, caused writs of attachment to be issued against

them on these notes, and the bill contains the further aver-ment that "*the attachments were duly laid in the hands of John Henry aforesaid.*"   As nothing had been said about "John Henry aforesaid" up to this time in the bill of complaint, nor anything subsequently so far as I can discover, I was not a little puzzled to understand why these attach-ments in the language of the bill, "*were laid in John Henry's hands.*"

Upon inquiry I am informed that it was |intended to aver, that the writs of attachment were issued against John-son & Boher and *levied upon their goods* or credits in the hands of Henry; that Henry filed his answers to the writs of attachment admitting that he owed Johnson & Boher $1,558.60.

The bill further alleges that in September, 1865, the complainant obtained July 1, judgment of condemnation of the goods seized under the writs of attachment, but that it was subsequently discovered that Mr. Ennis, an at-torney of this Court, had before such judgment entered his appearance, and the judgments being taken *ex parte*, a mo-tion was made to set them aside as irregular, which motion was granted.

It ought to have been before observed that Johnson & Boher are alleged in the bill of complaint to have been non-residents of this District, and that in pursuance of the former practice of this Court (now very wisely corrected by act of Congress) a non-resident whose goods were attached had only to employ some one calling himself a lawyer to enter his appearance in the cause as attorney for defendant, and such appearance *ipso facto* dissolved the attachment, and the debtor usually hurried out of the District his goods and left his creditor without recourse.

In June, 1865, Johnson & Boher, being insolvent as be-fore observed, made an assignment for the benefit of their creditors; this assignment is made an exhibit in this com-

plainant's bill. It is void and fraudulent upon its face for several reasons.

1st. The assignment contains this provision in effect: "The trustee (assignee) is hereby authorized and empowered to make sale (of the property assigned) '*whenever he shall think proper and most conducive to the interests of the trust.*'"

To sanction a provision of this kind would allow a debtor to place his property in the hands of his friend, and say to his creditor that whenever *my friend* thinks it wise, prudent, or proper to dispose of this property in payment or part payment of your debt he may do so; until then you must wait.

A man's property is liable for the payment of his debts, and courts should not countenance any attempts by way of hinderance, delay, &c., to the immediate application of such property to the payment of honest debts. To hinder and delay creditors has been an offense for near three hundred years.

In the second place, the trust deed contains this provision in effect, that the moneys arising from the sale of the trust estate "shall in the first instance be held liable for and be applied to the payment of all expenses attending the execution of the trust inclusive of counsel fees for prosecuting claims of and defending and resisting claims against the trust estate, and also reasonable commissions to the trustee," &c.

This provision is an express authority for the trustee to expend whatever shall be realized on the sale of the trust estate for the benefit of the legal profession, if he thinks proper to do so, in counsel fees, and looks very like an invitation to do so, in preference to applying such surplus to the payment of honest debts. Such a purpose, however, worthy we might esteem it, under ordinary circumstances, does not in this case quite command approval. I think the equities of a creditor to a participation in his debtor's estate superior to that of the legal profession.

The assignment contains this further provision, after distributing the estate from first to ninthly, the trustee is directed then "to pay in such order and priority and out of such part of the trust funds as by law they may be entitled to be paid all such of the creditors of the parties of the first part in their copartnership or individual relations as shall within ninety days from the date of this deed signify their assent to the terms thereof, and execute and deliver to the said parties of the first part a full and final release and discharge of and from all claims and demands against them, or either of them, to the time of executing these presents, in full satisfaction and payment of all such claims, with all interest thereon, of such creditors assenting as aforesaid and executing such release of the funds applicable to them respectively, as shall be insufficient to discharge the whole." Then, tenthly, &c.

The legal effect of this provision, quoted at some length, is simply this: A debtor in failing circumstances says to his creditors, I have provided for nine of my friends, creditors of my estate. There may be something left after paying them, and there may not be. If there is any thing left you shall be permitted to share ratably in that surplus, provided you will execute a release in full of all I owe you, and run your chance of taking some thing, most likely nothing, after my nine friends before mentioned have been first served.

There is one other provision in this assignment which deserves notice. It is provided in conclusion "*that neither the trustee nor his representatives shall be answerable for or bound to make good any deterioration or loss that may happen to the* said trust estate effects and property, unless the same be consequent upon his wilful commission, omission or neglect."

If legal effect were given to this provision, it would certainly exempt the trustee from all liability for failing to

*23*

exercise *ordinary care* in the management of the trust estate; and it is doubtful whether he could be held liable for acts of gross negligence. Observe, that the language of the deed is, that the trustee is only to be liable for acts of "wilful commission, omission or neglect" in the management of the trust estate. I understand this provision to mean that however negligent, dilatory, inattentive or foolish the trustee may be in this management of the trust estate, the trustee is to be held harmless, and the creditor remediless; that nothing short of a wilful commission, omission or neglect resulting in waste of the estate shall be a ground of liability against the trustee.

For more than two hundred years a trustee, from motives of public policy, has been held to the *exactest* diligence in the discharge of the duties of his trust, such as guardians, executors, administrators, &c., but here is an attempted provision for relieving a trustee from all kinds of negligence and inattention to the duties of his trust, unless the party complaining can show to the satisfaction of a court that the act of "commission, omission or neglect" which resulted in the waste or destruction of the estate *was wilful,* that is, intentional. It will be a long time, I trust, before a court of law, and especially a court of equity, will open the door to all the possible frauds which might and naturally would be practiced if the foregoing provision were held to be legal.

The assigment, therefore, upon each of the grounds I have mentioned is fraudulent and void as against the creditors of Johnson & Boher.

The bill further states with little regard to the order of events that on the 8th of May, 1865, just about one month before the execution of the assignment, Johnson (one of the defendants) applied to the complainant for a further loan of $1,000, that she delivered to him her check for that amount on the banking house of Lewis Johnson & Co., and received in exchange two notes of the firm of Johnson &

Boher for $500, each dated May 1st, one payable in three and the other in four months from date; that after giving said check and receiving said notes the complainant alleges that " she was informed and believes that the said firm of Johnson & Boher were in failing circumstances and that she immediately called on the said banking house and stopped the payment of her check."

The complainant offers to bring into court the two notes to have them as well as the check she drew on the said banking house cancelled and delivered up. We infer from the statement of the bill that Johnson & Boher have obtained nothing upon the complainant's check.

It is not, however, averred in the bill, that at the time Johnson obtained the check he knew the firm of Johnson & Boher were insolvent or that the check was fraudulently obtained. The simple fact that the firm was unable to pay its debts at the time it procured the loan of $1,000 from the complainant on the 8th of May, 1865, is no ground for the interference of this Court. If, however, the firm knew at the time it was negotiating the loan it could not pay, or did not intend to pay such loan, or, in other words, that the loan was made with intent to defraud the complainant, it was void both at law and in equity.

The bill further alleges in substance that after these attachments were issued against the property of Johnson & Boher, the complainant called upon one of the firm of Johnson & Boher in Baltimore, and was informed that the reason why the complainant had not been secured the payment of her claims in the deed of assignment, was because the firm supposed that she had obtained a lien upon the effects of the firm by the service of the several writs of attachment. [*] He doubtless thought that a writ of attachment against the goods and effects of a non-resident debtor meant something more than the employment of a lawyer to appear in the suit and move to dissolve the writ.

The relief prayed in the bill is first an injunction restraining the firm of Johnson & Boher, the assignee Cominsky, and John Henry, a creditor of the firm of Johnson & Boher from disposing of, or removing from this jurisdiction the effects of the firm.

To this bill of complaint a demurrer is interposed assigning various causes of demurrer.

"1st. That the said complainant hath not stated in and by her said bill such a case as doth or ought to entitle her to any such relief as is thereby sought and prayed for from or against those defendants, or either of them.

"2d. That the matters stated do (not) give the complainant any cause of complaint against these defendants; the same, being triable and determinable at law, ought not to be inquired of by this Court.

"3d. That the said bill is multifarious in this, that it unites in one and the same bill the allegations with reference to the proceedings in the attachment suits in the said bill set forth in regard to which Carlie Hayes and John Henry are alleged to be necessary and proper parties, and for which relief is prayed against them, with another and distinct claim in reference to which the complainant seeks relief, wherein she alleges she has a claim to have a certain check in said bill mentioned, set forth and alleged to be in the hands of Johnson & Boher, or the assignee cancelled, a matter in which the said Carlie Hayes and John Henry are not alleged to be in any way interested."

The first two grounds of demurrer amount to nothing beyond a general demurrer to the bill. The third is good ground of special demurrer. There is nothing in the bill either by averment or inference connecting Carlie Hayes and John Henry with the procurement of the check for $1,000 by the defendants Johnson & Boher.

The idea in the mind of the solicitor for the complainant in this case, would seem to be that a Court of

Chancery could easily remedy the operation of the law of attachment against non-resident debtors as existing at the time this bill was filed, and that this fraudulent assignment of Johnson & Boher stood in the way of a writ of *fieri facias* issued by a court of law, upon the several judgments the complainant had obtained against Johnson & Boher. This void and fraudulent assignment by Johnson & Boher did not amount to the force of a cobweb against an execution obtained against the firm.

The demurrer in this case is sustained with leave of the complainant to amend her bill of complaint on payment of costs to be taxed by the clerk of this Court.